UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **IMRAN CHAUDHRI, individually and on behalf of those similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LUMILEDS LLC,**<br><br>**Defendant.** | Civ. No. 18-2167 (KM) (CLW)<br><br>**OPINION** |

<u>**KEVIN MCNULTY, U.S.D.J.:**</u>

Before the Court is the motion of defendant Lumileds, LLC ("Lumileds") to dismiss plaintiff Imran Chaudhri's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and 12(f). In this putative class action, Chaudhri has brought various claims sounding in fraud pertaining to certain advertising of an automotive headlamp bulb[1] that is manufactured by Lumileds. The plaintiff, when he read the packaging for defendant's X-TremeVision headlamp bulb, hoped it would satisfy his Goethesque quest for "more light." The question here is whether the bulb's packaging represented that the X-tremeVision headlamp bulb would project its beams (a) more brightly in all directions, as measured by a laboratory luminous flux test; or (b) farther, *e.g.*, as measured from the front of a car when the bulb is installed in the headlight lens/reflector assembly.

In May of 2015, Chaudhri purchased a twin package of "Philips X-tremeVision" headlight bulbs. He claims that he purchased the X-treme bulbs based on a representation on the packaging that it would produce 100% more light. The bulbs come in a blister pack, *i.e.*, a clear plastic package embedded

---

[1]     It seems that the term "headlamps" is often used indifferently to refer to the entire headlight assembly or to the bulbs installed therein. The X-tremeVision products at issue here are replacement bulbs. To refer to them, I will use the term "bulbs" or "headlamp bulbs."

1

in a card. At the top right corner of the card, above the bulbs, is the statement "+100% more light." Lower on the card, below the bulbs, is a second, composite representation. That second representation contains an aerial depiction of a car with headlight beams projecting from the front (shining to the right of the card). Bisecting the light beam vertically is a line, demarcated "standard." The light beam from the vehicle, as pictured, extends well beyond the "standard" line. At the far end of the beam appears the designation "+100%." (*See* photo of package at p.5, *infra.*)[2]

Chaudhri wondered whether it was true that the Philips X-treme headlamp bulb emitted "+100% more light" than the less expensive standard Philips headlamp bulb. Chaudhri's counsel had Calcoast-ITL, a photometric testing laboratory, conduct a luminous flux test to compare the output of the two. Calcoast's luminous flux test measured the total light emitted *in all directions* from the bulb, designated in Lumens.[3] Calcoast's testing determined that the Phillips X-tremeVision headlamp bulbs produced only 2.3%, not 100%, more Lumens than the standard bulb.

Lumileds says that Chaudhri distorts the meaning of the package advertising by focusing solely on the phrase "+100% more light" at the top of the card. That phrase, says Lumileds, must be understood in the context of the visual depiction of the car and its headlight beams, farther down on the card. That composite representation, according to Lumileds, does not signify that the X-tremeVision headlamp bulb would emit 100% more light spherically, in all directions, which is what Calcoast's luminous flux test measured. Rather, it signifies that when the X-tremeVision headlamp is installed in the car's lens/reflector headlamp assembly, the *distance* its beam is projected is

---

[2]     The parties, by the way, do not focus on the + sign that precedes the 100%. Presumably "+100% more" is a form of redundant emphasis, like the claim that a certain insecticide "kills bugs dead."

[3]     The Lumen (abbreviated lm), as I understand it, is a measure of the visible light emitted by a source. It is related to, but not the same as, the candela, which is a modern refinement of the old unit of "candlepower."

"+100%" than that of a standard bulb. As to that issue, no testing has been done by the plaintiff.

Chaudhri opposes Lumileds's motion to dismiss, and cross-moves for summary judgment. Chaudhri asserts that the luminous flux test results and the X-tremeVision packaging permit a conclusion as a matter of law that Lumileds was representing to the consumer that the bulb produces "100% more light," and that this representation was false. To bolster his argument, Chaudhri points to certain information in Lumileds's patent for the X-tremeVision headlamp.

This Court has considered the parties' submissions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. Without fact finding, however, I must find that the packaging of the product, viewed as a whole, is ambiguous as to whether the X-tremeVision headlamp is claimed to be generally 100% brighter, or only that, when installed, it projects its beams farther down the road. The arguments have a circular quality, as each party continues to simply point to a different part of the card and claim victory. Lumileds focuses on the representation in the middle of the package card, accompanied by an image of a car that seemingly suggests that "+100%" refers to distance; Chaudhri focuses on the unadorned representation "+100% more light" at the top of the card. This issue that cannot be resolved on a motion to dismiss (or, as Chaudhri would have it, on a premature, pre-discovery motion for summary judgment). For the reasons stated below, then, both motions are denied.

I.     **Facts**

A. **Procedural History**

Chaudhri is a resident of New Jersey who seeks, pursuant to Fed. R. Civ. P. 23, to represent a nationwide class of persons who purchased Philips X-tremeVision headlamps. (Compl. ¶¶1, 29-38).[4] On February 15, 2018,

---

[4]     The allegations in the complaint are treated as true for purposes of the motion to dismiss. I cite to certain items in the record as follows:

Chaudhri filed a federal-court complaint against Lumileds, asserting five counts: (1) New Jersey Consumer Fraud Act ("NJCFA"); (2) common law fraud; (3) negligent misrepresentation; (4) express warranty; and (5) the Magnuson-Moss Warranty Act.

On May 7, 2018, Lumileds moved to dismiss the entire complaint for failure to state a claim, lack of standing, and lack of jurisdiction. (DE 15). On June 25, 2018, Chaudhri opposed the motion to dismiss and filed a cross-motion for summary judgment. (DE 24).

### B. Allegations in Complaint

Lumileds[5] manufactures automotive lighting products, including bulbs for headlamps. (Compl. ¶8). In May of 2015, Chaudhri purchased a twin package of "Philips X-tremeVision 9003 headlamps," a Lumileds product. (Id. at ¶¶8-9). Chaudhri paid $59.99 for two Philips X-tremeVision headlamps; in comparison, a Philips standard 9003 headlamp, sold singly, costs $10.99. (Compl. ¶12). Chaudhri bought the headlamps at a Pep Boys located in Piscataway, New Jersey. (Compl. ¶10).

Chaudhri purchased this particular headlamp because the product's packaging "represented that Philips X-tremeVision headlamps produce 100% more light":

---

| | | |
|---|---|---|
| DE __ | = | Docket entry number in this case; |
| Compl. | = | Plaintiff Chaudhri's complaint in this action (DE 1); |
| Calcoast Rpt | = | Jan. 27, 2016 Calcoast Test Results (Compl. Ex. A, DE 1 at 17); |
| DBr | = | Defendant Lumileds's brief in support of its motion to dismiss (DE 15); |
| PSMF | = | Chaudhri's statement of undisputed material facts (DE 24-2); |
| PBr | = | Chaudhri's brief in opposition to Lumileds's motion to dismiss and in support of its cross-motion for summary judgement (DE 24); |
| DRS | = | Defendant Lumileds's responsive statement to Chaudhri's statement of undisputed facts (DE 27-1); and |
| DRBr | = | Lumileds's reply brief (DE 27). |

[5]    In 2015, Philips Lumileds and Philips Automotive Lighting were combined into a single, stand-alone company, Lumileds, LLC. (Compl. ¶¶4-5).

4



(Compl. ¶11, Figure A).

In November of 2015, one of Chaudhri's X-tremeVision headlamps "burned out," and he purchased a replacement headlamp from a different company, Sylvania. (Compl. ¶¶15-16). Chaudhri did not notice any difference in light output between the Sylvania headlamp and the Philips X-tremeVision headlamp. (Compl. ¶17). This apparently aroused Chaudhri's suspicions as to whether the X-tremeVision bulbs represented an improvement over less expensive ones.

Chaudhri's counsel[6] contacted Calcoast-ITL, a photometric testing laboratory, to determine whether the Philips X-tremeVision headlamps truly produce "100% more light" than standard Philips headlamps. (Compl. ¶18 & Ex. A, Calcoast Rpt). Calcoast tested four Philips X-tremeVision 9003

---

[6]      This was not Chaudhri's first rodeo. Through the same counsel, he had already been a named plaintiff in a class action against Sylvania regarding Sylvania's headlamp bulbs. *See Chaudhri v. Osram Sylvania, Inc., et al.*, Civ No. 11-5504 (D.N.J.).

headlamps and four Philips standard 9003 headlamps. (Compl. ¶21). Calcoast conducted a "luminous flux measurement," which tests the total light emitted from a bulb. (Compl. ¶20 & Calcoast Rpt at 1). More specifically, this test measures "the total light emitted in all directions from the bulb in units of Lumens (Lm)." (Calcoast Rpt at 2).

A luminous flux test, which was employed by Calcoast, is different from a luminous intensity test, which was not employed. The luminous flux test (at least as employed by Calcoast here) measures light that is emitted from a bulb in all directions. It is thus described by Lumileds as a "spherical test." A luminous intensity test, by contrast, would be a more appropriate measure of the light projected in front of a vehicle by a headlight bulb. Luminous intensity (again, in this context) would depend not just on the brightness of the bulb itself, but also on the interaction of a bulb with the lenses and reflectors of the car's headlight assembly. (Calcoast Rpt at 2). Thus Calcoast's report explains that the results of a luminous flux test may be different from those of a luminous intensity test: "[w]hen installed in a headlamp, the total emitted light from the bulb is redirected using reflectors and/or lens optics to various points in front of the vehicle. This redirected light is measured within a solid angle and is expressed as luminous intensity in units of Lumens per steradian or Candela (Cd)." (Calcoast Rpt at 2).

Calcoast's luminous flux test determined that the Philip's X-tremeVision headlamps produce, on average, 2.3% more Lumens than the Philips standard headlamps in low beam configuration. (Compl. ¶22). Specifically, the Philips standard 9003 headlamps produced an average light output of 894 Lm, whereas the Philips X-tremeVision 9003 headlamps produced an average total light output of 915 Lm. (Compl. ¶21). This, says Chaudhri, is "far less" than "100% more light," and so the representation on the Philips X-tremeVision packaging is false. (Compl. ¶22).

In fact, Chaudhri claims, a 100% boost *could not* occur. If the X-tremeVision headlamp bulbs were to actually produce 100% more light on the luminous flux test (*i.e.,* an output of 1820 Lm or more), they would violate

6

federal regulations. (Compl. ¶¶23-28; *see* 49 C.F.R. §§ 564, 571.108 (requiring that replaceable headlamps conform to federal regulations that specify maximum power (measured in watts), luminous flux, and luminous intensity)). The federal regulations narrowly constrain the range for total light emitted from a light source (luminous flux) to 910 Lm, plus or minus ("+/-") ten percent. (Compl. Ex. B at 2, DE 1 at 26). Thus the luminous flux range for low-beams is limited by regulation to a range of 819 Lm to 1001 Lm. (Compl. ¶27). Chaudhri claims that if Philips X-treamVision headlamps actually produced "100% more light," measured in lumens, then their output would be 1820 Lms, well outside the range permitted by the federal regulations. (Compl. ¶28). Therefore, says Chaudhri, Lumileds must have known its representation on the packaging was false, because it could not sell headlamps that exceeded 1001 Lumens. (Compl. ¶41).

### C. Additional Facts Asserted on Summary Judgment

In addition to confirming the factual allegations of the complaint,[7] Chaudhri's summary judgment motion stresses that the "100% more light claim" on the package is not qualified or explained. (PSMF ¶2). He also points to U.S. Patent 8,471,447, which covers the technology used by the Philips X-tremeVision headlamps. (PSMF ¶16). The patent, he says, does not indicate that the technology produces "more" light, but only that it redirects light. (PSMF ¶¶16-24).

These facts are to a great extent disputed by Lumileds. Most fundamentally, however, because the parties are talking past each other regarding the packaging, each says that the other's facts are not material.

### II.  Discussion

Lumileds moves to dismiss Chaudhri's complaint on several grounds. First, Lumileds moves to dismiss the fraud claims for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and for failure to plead fraud

---

[7]     Chaudhri asserts many of the same facts in his motion for summary judgment that are alleged in his complaint. I will not repeat them here.

with specificity under Rule 9(b). (DBr at 14-23). Lumileds further claims that Chaudhri has insufficiently pled reliance, a causal link between the misrepresentation and a purported loss, and damages. (DBr at 24-27). As to the claims of negligent misrepresentation and common law fraud, Lumileds asserts that the complaint fails to plead Lumileds's knowledge of falsity.

Lumileds also moves to dismiss Chaudhri's complaint under Rule 12(b)(1), claiming that Chaudhri lacks standing to sue. Chaudhri, says Lumileds, is a serial litigant whose claimed injuries are self-inflicted, solely for the purpose of litigation.

Finally, Lumileds moves to dismiss or strike any class claims that may be asserted on behalf of any non-New Jersey purchasers. This action has not been certified as a class action, however.

Chaudhri has opposed Lumileds's motion to dismiss. Upping the ante, he has cross-moved for summary judgment. He asserts that the documentary evidence attached to the complaint and in support of Lumileds's motion establishes as a matter of law that the statement "+100% more light" is false.

### A. Lumileds's Motion to Dismiss for Failure to State a Claim
#### i.  Applicable standards

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

8

liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

To the extent Chaudhri's allegations sound in fraud, they are subject to heightened pleading requirements. A plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*

Under Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004). Although Rule 9(b) does not require the recitation of "every material detail of the fraud such as date, location and time, plaintiffs must use 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *In re Rockefeller Ctr. Props. Secs. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002) (quoting *In re Nice Sys.*, 135 F. Supp. 2d 551, 557 (D.N.J. 2001)). The heightened pleading requirements of Rule 9(b) apply to New Jersey Consumer Fraud Act claims as well as common law fraud claims. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). Further, where a plaintiff's negligent misrepresentation claim "alleg[es] fraudulent activity," it too "must be pled with sufficient particularity

under Rule 9(b)." *See Travelers Indem. Co. v. Cephalon, Inc.*, 620 F. App'x 82, 85 n.3 (3d Cir. 2015).

When deciding a motion to dismiss, a court typically does not consider matters outside the pleadings. However, a court may consider documents that are "integral to or explicitly relied upon in the complaint" or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir.1999) (emphasis and citations omitted); *see In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 133 n.7 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (on motion to dismiss, court may consider, *inter alia,* "exhibits attached to the complaint"); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 292 (D.N.J. 2009) (court may consider documents referenced in complaint that are essential to plaintiff's claim).[8]

Reliance on these types of documents does not convert a motion to dismiss into a motion for summary judgment. "When a complaint relies on a document . . . the plaintiff obviously is on notice of the contents the document, and the need for a chance to refute evidence is greatly diminished." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993).

### ii.  New Jersey Consumer Fraud Act ("NJCFA")

Lumileds moves to dismiss Chaudhri's NJCFA claim on the basis that he has insufficiently pled (1) unlawful conduct on the part of defendants; (2) a causal connection between Lumileds's unlawful conduct and an ascertainable loss; and (3) damages.

---

[8]     Also properly considered are certain matters of public record, including prior judicial proceedings. *Schmidt*, 770 F.3d at 249; *Iacaponi v. New Amsterdam Cas. Co.*, 379 F.2d 311, 311-12 (3d Cir. 1967) (considering previous litigation referred to in complaint). Reference is made in Lumileds's motion to a prior, now-settled litigation involving Sylvania bulbs, which is identified in Chaudhri's complaint. (Compl. ¶36).

The NJCFA was passed to address "sharp practices and dealings in the marketing of merchandise and real estate whereby the consumer could be victimized by being lured into a purchase through fraudulent, deceptive or other similar kind of selling or advertising practices." *Daaleman v. Elizabethtown Gas Co.*, 77 N.J. 267, 271 (1978). As "remedial legislation," the NJCFA "should be construed liberally." *Int'l Union of Operating Engineers Local No. 68 Welfare Fund v. Merck & Co.*, 192 N.J. 372, 377 n.1 (2007) (hereinafter "*IUOEL 68*").

The relevant portion of the NJCFA provides as follows:

> [t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J. Stat. Ann. § 56:8-2.

To state a claim under the NJCFA, a plaintiff must allege the following three elements: (1) unlawful conduct by the defendants; (2) an ascertainable loss on the part of the plaintiff; and (3) a causal relationship between the defendants' unlawful conduct and the plaintiff's ascertainable loss. *IUOEL 68*, 192 N.J. at 389. Unlawful conduct falls into three general categories: affirmative acts, knowing omissions, and violation of regulations. N.J. Stat. Ann. §§ 56:8-2, 56:8-4; *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994). An affirmative misrepresentation under the NJCFA is "one which is material to the transaction and which is a statement of fact, found to be false, made to induce the buyer to make the purchase." *Mango v. Pierce-Coombs*, 370 N.J. Super. 239, 250-51 (App. Div. 2004) (internal quotations and citation omitted); *see Arcand v. Brothers Int'l Corp.*, 673 F. Supp. 2d 282, 296-97 (D.N.J. 2009).

Importantly, "[u]nlike common law fraud, the NJCFA does not require proof of reliance." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 606 (3d Cir. 2012).

Under the NJCFA, affirmative acts—particularly, representations about products offered for sale—must be "'misleading' and stand outside the norm of reasonable business practice in that it will victimize the average consumer." *New Jersey Citizen Action v. Schering-Plough Corp.*, 367 N.J. Super. 8, 13 (App. Div. 2003) (quoting *Turf Lawnmower Repair, Inc. v. Bergen Record Corp.*, 139 N.J. 392, 429 (1995)). Moreover, the NJCFA recognizes that "the fact that [labels on products are] literally true does not mean they cannot [also] be misleading to the average consumer." *Smajlaj v. Campbell Soup Co.*, 782 F. Supp. 2d 84, 98-99 (D.N.J. 2011) (holding that customers who bought soups that were advertised as having "25% less sodium" than regular soup, which was true statement when compared to older version of regular soup, nonetheless stated claim under NJCFA); *see Stewart v. Smart Balance, Inc.*, 2012 U.S. Dist. LEXIS 138454, at *27 (D.N.J. June 25, 2012) (denying motion to dismiss NJCFA claim where milk product advertised that it was "fat free," but also indicated that it had 0.5 grams of fat); *see also Miller v. American Family Publishers*, 284 N.J. Super. 67, 76 (Ch. Div. 1995) (denying defendant's motion for summary judgment where magazine urged its consumers to quickly return a paid subscription to increase customer's chances of winning sweepstakes even though "Defendant [was] correct that a careful, literal reading of the quoted language reveals that the words do not actually say what plaintiffs claim they are intended to convey").[9]

"When the alleged consumer-fraud violation consists of an affirmative act, intent is not an essential element and the plaintiff need not prove that the defendant intended to commit an unlawful act." *Cox*, 138 N.J. at 17-18 (internal citation omitted). "Often, the determination of whether business

---

[9]     Additionally, statements that are "not statements of fact, but are merely expressions in the nature of puffery" are not actionable under the NJCFA. *See Schering-Plough Corp.*, 367 N.J. Super. at 14.

conduct 'stand[s] outside the norm of reasonable business practice' presents a jury question." *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 514 (D.N.J. 2009), *aff'd*, 374 Fed. App'x 341 (3d Cir. 2010) (quoting *Turf*, 139 N.J. at 416); *Stewart*, 2012 U.S. Dist. LEXIS 138454, at *27 (holding that whether milk carton that advertised being "fat free," but also stated that it contained 0.5 grams of fat, was misleading "as a whole" is a question of fact and could not be resolved on motion to dismiss).

Lumileds focuses on the representation in the middle of the package card. It consists of an image of a car with its beams shining to the right, well past a vertical line marked "standard," leading the eye to the message "+100%." The message conveyed, says Lumileds, is that its X-tremeVision bulbs, when installed, project light farther down the road when compared to standard bulbs. In contrast, Chaudhri focuses on the written, unillustrated representation of "+100% more light" at the top of the package card.

Chaudhri has sufficiently pled a claim under the NJCFA.[10] He alleges that the "+100% more light" claim on the package is a form of unlawful conduct—specifically, an "affirmative act" of misrepresentation. Lumileds knew the representation was false, he says, the bulbs had to conform with federal regulations, which would not have permitted them to be twice as bright. "Luminous flux measurement," like that conducted by Calcoast, would have revealed that the number of Lumens produced by the bulbs is not "100% more" than that of standard bulbs. The representation allegedly was intended to, and

---

[10]     A portion of Lumileds's brief addresses "lack of substantiation," a theory of liability premised upon the lack of scientific support for an advertised benefit on a product. (DBr at 22; DRBr at 13 n.8); *see Franulovic v. Coca Cola Co.*, 390 F. App'x 125, 127-28 (3d Cir. 2010); *see also In re Gerber Probiotic Sales Practices Litig.*, 2013 U.S. Dist. LEXIS 121192, at *25 (D.N.J. Aug. 22, 2013) ("Plaintiffs distinguish a lack of substantiation argument — where a plaintiff argues that there is no competent evidence to support a claim made in defendant's advertising or labeling — from their claim which they maintain is premised upon allegations that competent scientific evidence demonstrates that claims made by a defendant are objectively false."). That theory does not appear in the complaint, however, and Chaudhri clarifies in his opposition, that he is not pursuing a claim based on a lack of substantiation. (PBr at 4 n.4). Accordingly, I do not address the issue.

did, induce consumers to buy. Chaudhri paid approximately $59.99 for two Phillips X-tremeVision headlamp bulbs, as opposed to $10.99 for a single standard bulb. He alleges that he bought the more expensive X-tremeVision product based on the representation that it would produce "100% more light."

Lumileds cites *Gaul v. Bayer Healthcare LLC*, 2013 U.S. Dist. LEXIS 22637 (D.N.J. Feb. 11, 2013), in an attempt to sidestep Chaudhri's contention that the truth of the package representations should be assessed in relation to the "luminous flux measurement" test. *Gaul,* however, does not require rejection of Chaudhri's contentions at the motion-to-dismiss stage. The complaint in *Gaul* alleged that defendant Bayer deceived consumers with false advertising for Citrical SR, a calcium supplement. *Id.* at \*2. The Citrical SR label provided that "a single dose of Citrical SR was equivalent to competing supplements which require two doses." *Id.* A report issued by the National Advertising Division of the Better Business Bureau stated that the particular testing methodology used by Bayer was unreliable. *Id.* Because that report criticized the underlying testing but stopped short of supplying a factual basis to believe that Bayer's claims were in fact false, the complaint was nevertheless dismissed. *Id.* at \*4. Those facts do not so clearly map onto the facts of this case as to require the court to grant Lumileds's motion to dismiss. Among other things, the positions of the parties are reversed; here the plaintiff, which is entitled to the benefit of all inferences on a motion to dismiss, is the one doing the testing, and the defendant is the one criticizing.

Whether the packaging of the X-treme product, taken as a whole, is misleading to the consumer cannot be decided as a matter of law on this motion to dismiss. Arguments about the relevancy of Calcoast's testing go to the merits of Chaudhri's claims, but do not establish that the complaint itself is inadequate. Granting Chaudhri every reasonable inference and reviewing the packaging as a whole, I cannot choose some metric and deem isolated statements on the package to be true. Indeed, even if a portion of a label were false, by some metric, that would not answer the pertinent factual question

14

inquiry under the NJCFA: whether the labeling as a whole is misleading to an average consumer. As to that question, Chaudhri may or may not prevail, but he has alleged sufficient facts to make out a claim.

Next, I address Lumileds's arguments regarding causation. The third element of a NJCFA claim "requires 'that a causal relationship be established between any ascertainable loss and the unlawful practice condemned.'" *Mickens v. Ford Motor Co.*, 900 F. Supp. 2d 427, 437 (D.N.J. 2012) (quoting *Ramanadham v. New Jersey Mfrs. Ins. Co.*, 188 N.J. Super. 30, 33 (App. Div. 1982)). Stated simply, a plaintiff must plead that the "unlawful consumer fraud caused his loss." *Cox*, 138 N.J. at 22.

Chaudhri has sufficiently pled a causal relationship between the representation on the packaging and an ascertainable loss. He allegedly purchased the Philips X-tremeVision bulbs because the package promoted them as a superior product that produced "100% more light" than a standard bulb. (Compl. ¶¶42-44). Lumileds argues that Chaudhri's belief in these representations is feigned, as evidenced by Chaudhri's filing of a similar, prior lawsuit regarding Sylvania's headlamp bulbs. That argument, however, goes to the credibility, not the sufficiency, of the allegations.

Finally, I address Lumileds's contention that Chaudhri has insufficiently pled an ascertainable loss, or damages. The NJCFA provides for recovery by "[a]ny person who suffers any ascertainable loss of moneys or property, real or personal, as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act[.]" N.J. Stat. Ann. § 56:8-19; *see Maniscalco v. Brother Int'l Corp.*, 627 F. Supp. 2d 494, 503 (D.N.J. 2009) (citing *Schering-Plough Corp.*, 367 N.J. Super. at 12). "An ascertainable loss occurs when a consumer receives less than what was promised." *Union Ink Co. v. AT&T Corp.*, 352 N.J. Super. 617, 646 (App. Div. 2002); *see also Miller*, 284 N.J. Super. at 90-91 ("For their money, they received something less than, and different from, what they reasonably expected in view of defendant's presentations. That is all that is required to establish ascertainable loss.").

Lumileds denies that there is an ascertainable loss, but makes no substantive argument. (*See* DBr at 27-28.) The complaint alleges that Chaudhri paid $59.99 for two x-TremeVision bulbs based on a representation that each produced 100% more light than a standard bulb selling for $10.99. (Compl. ¶12). That is a sufficient allegation that he received less than what he bargained for.

The motion to dismiss the NJCFA claim is therefore denied.

### iii.  Common Law Fraud & Negligent Misrepresentation

Lumileds also moves to dismiss Chaudhri's claims of negligent misrepresentation and common law fraud. Because many of the arguments parallel those discussed in regard to the NJCFA, less discussion is required.

"Common law fraud involves a more onerous standard than a claim for fraud under the [NJ]CFA." *Mason v. Costco Wholesale Corp.*, 2009 U.S. Dist. LEXIS 76176, at *18 (D.N.J. Aug. 25, 2009) (citing *Cox*, 138 N.J. at 17-18). The elements of common law fraud under New Jersey law are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Triffin v. Automatic Data Processing, Inc.*, 394 N.J. Super. 237, 246 (App. Div. 2007) (citing *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997)).

A claim for negligent misrepresentation "requires the plaintiff to prove that the putative tortfeasor breached a duty of care owed to plaintiff and that plaintiff suffered damages proximately caused by that breach." *Highlands Ins. Co. v. Hobbs Grp.*, 373 F.3d 347, 351 (3d Cir. 2004) (citing *Weinberg v. Dinger*, 106 N.J. 469 (1987)). "The elements of negligent misrepresentation are essentially the same as those of common law fraud except negligent misrepresentation *does not require scienter.*" *Bonnieview Homeowners Ass'n, LLC v. Woodmont Builders, LLC*, 655 F. Supp. 2d 473, 517 (D.N.J. 2009) (emphasis added). To prove a claim of negligent misrepresentation under New Jersey law, the plaintiff must demonstrate that "1) the defendant negligently

16

provided false information; 2) the plaintiff was a reasonably foreseeable recipient of that information; 3) the plaintiff justifiably relied on the information; and 4) the false statements were a proximate cause of the plaintiff's damages." *McCall v. Metropolitan Life Ins.*, 956 F. Supp. 1172, 1186 (D.N.J. 1996).

As to falsity, reliance, and damages, Lumileds advances arguments similar to those in its motion to dismiss the NJCFA claim. For the reasons expressed above, I deny Lumileds's motion to dismiss Chaudhri's negligent misrepresentation and fraud claims based on the sufficiency of the pleading as to those elements.

I add some discussion as to the element of knowledge of falsity. In addressing Lumileds's knowledge, Chaudhri asserts that Lumileds knew that its product did not produce "100% more light," which—as Chaudhri measures it—would equate to 1820 Lumens. Federal regulations limit such bulbs to 1001 Lumens, and Lumileds would necessarily have tested them for compliance. (Compl. ¶¶ 27, 28). Chaudhri asserts that Lumileds must therefore have known that the representation on the packaging was false. (Compl. ¶41).

Once again, the issue boils down to the parties' differing interpretations of the "more light" representations on the packaging. Under Lumileds's interpretation, the representation is not false, so it could not have had "knowledge" that it was false. But granting Chaudhri his interpretation of the label, as I will do on this motion to dismiss, he has sufficiently pled this element. Mental elements of a cause of action must ordinarily be proven circumstantially, and even Rule 9(b) permits intent to be pled generally. Accordingly, Lumileds's motion is denied as to the elements of knowledge and/or intent. *Cf. In re Sunrise Sec. Litig.*, 793 F. Supp. 1306, 1322 (E.D. Pa. 1992) (addressing common law fraud and denying motion to dismiss because "whether Directors had knowledge or should have had knowledge of the matters allegedly misrepresented or withheld is an issue more properly dealt

17

with after discovery has taken place and not on the basis of the pleadings alone.").[11]

As to the fraud and negligent misrepresentation counts, the motion to dismiss is denied.

### B. Lumileds's Motion to Dismiss for Lack of Standing

Lumileds moves to dismiss Chaudhri's complaint under Rule 12(b)(1) for lack of standing. Because Chaudhri brought a prior action in which he alleged that Sylvania's headlamp contained misrepresentations on its packaging, Lumileds asserts that his "injury" in this case was self-inflicted. *See Chaudhri v. Osram Sylvania, Inc., et al.*, Civ No. 11-5504 (D.N.J.) (the "Sylvania Litigation"). I take this as an assertion that Chaudhri was not an ordinary injured consumer, but opportunistically sought out an "injury" on which he could sue.

"A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Jurisdiction must be established as a threshold matter. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998). A motion to dismiss pursuant to Rule 12(b)(1) may be brought as a facial or factual challenge. *See Church of the Universal Bhd. v. Farmington Twp. Supervisors*, 296 F. App'x 285, 288 (3d Cir. 2008). Where the motion challenges jurisdiction on the face of the complaint, the court only considers the allegations of the complaint and documents referred to therein in the light most favorable to the plaintiff. *Gould*

---

[11]    Lumileds does not specifically address each cause of action separately, but instead, generally alleges that Chaudhri has not pled sufficient facts to establish falsity, knowledge of falsity, reliance, causation, and damages. Lumileds's only references to Chaudhri's remaining claims (breach of express warranty and Magnuson-Moss Act) occur in parenthetical explanations of cases. (DBr at 23 (citing cases that have been dismissed based on failure to substantiate fraud allegations under breach of warranty and Magnuson-Moss Warranty Act)). For the reasons stated above, insofar as Lumileds raises the same arguments in relation to Chaudhri's warranty and Magnuson Moss claims, the motion is denied.

*Elecs., Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)).

By contrast, where the existence of subject matter jurisdiction is challenged factually, "no presumptive truthfulness attaches to the plaintiff's allegations," and the court may consider evidence outside the pleadings to satisfy itself of its power to hear the case. *Id.* As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing standing. *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 191 n.4 (3d Cir. 2011). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009) (quotation omitted).

Here, the distinction makes little difference. The Sylvania Litigation is extrinsic to this case, but its existence is judicially noticeable, even on an ordinary 12(b)(6) standard.

Article III of the Constitution requires that a plaintiff have standing to assert his or her claims. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992). To establish standing, a plaintiff must have

> (1) an injury-in-fact, which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) that it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Winer Family Tr. v. Queen*, 503 F.3d 319, 325 (3d Cir. 2007) (citing *Danvers Motor Co., Inc. v. Ford Motor Co.*, 432 F.3d 286, 290-91 (3d Cir. 2005)); *see Lujan*, 504 U.S. at 560-61.

Standing requires that a plaintiff's purported injury be traceable to the defendant's challenged conduct. *Lujan*, 504 U.S. at 560; *See Pennsylvania v. New Jersey*, 426 U.S. 660, 664, 96 S. Ct. 2333, 49 L. Ed. 2d 124 (1976) ("No [party] can be heard to complain about damage inflicted by its own hand."); *see also In re McNeil Consumer Healthcare*, 877 F. Supp. 2d 254, 276 (E.D. Pa.

19

2012) (holding that plaintiffs failed to establish standing where "plaintiffs undertook these actions on their own and any costs associated with them are, therefore, not traceable to the defendants." (citing 13A Charles Alan Wright, Arthur R. Miller, & Edward R. Cooper, Federal Practice and Procedure § 3531.5 at 354-60 & n.68 (3d ed. 2008) (although self-inflicted injury may serve as basis for standing, where injury is "almost solely . . . attributable to the plaintiff" or suffered "on the basis of purely speculative fears," it may not))).

Lumileds contends that Chaudhri's injury is self-inflicted, and indeed manufactured for the sole purpose of filing this lawsuit. (DBr at 29). In support, Lumileds cites Chaudhri's single previous litigation against Sylvania. This circumstance is not so overwhelming as to overcome what is a *prima facie* case of standing, *i.e.,* the plaintiff's personal purchase of a product worth less than represented. Citation to one other civil litigation does not establish that Chaudhri is a "serial" or "professional" litigant with no actual injury to show. (Dbr at 29); *cf. Harty v. Burlington Coat Factory of Pa., LLC*, 2011 U.S. Dist. LEXIS 64228, at *26 (E.D. Pa. June 16, 2011) (holding that ADA plaintiff sufficiently pled injury even though he had previously filed 226 ADA cases). And the complaint does allege that Chaudhri actually purchased the x-TremeVision bulbs and actually installed them in his car.

Standing is not defeated unless the injury is so completely due to the plaintiff's own conduct that the casual chain to defendant's allegedly wrongful acts is broken. *Cf. McConnell v. FEC*, 540 U.S. 93, 114, 124 S. Ct. 619, 643 (2003) (concluding that plaintiffs failed to establish standing where injury flowed entirely from plaintiffs' own personal choice and injury was therefore not traceable to challenged conduct), *overruled on other grounds*, *Citizens United v. FEC*, 558 U.S. 310, 130 S. Ct. 876 (2010). That is not established by the plaintiff having purchased another brand of headlamp bulb and likewise found it wanting. The motion to dismiss on standing grounds is denied.

### C. Lumileds's Motion to Dismiss for Lack of Jurisdiction

Lumileds moves to dismiss hypothetical non-New Jersey plaintiffs from this putative class action. This Court, it says, would not have personal jurisdiction over such non-New Jersey class members. (DBr at 30-38). Lumileds also asserts that Chaudhri, a New Jersey plaintiff, lacks standing to assert theories of liability that are predicated on the law of any State other than New Jersey. (DBr at 38-40).

At this stage of the litigation, these issues are hypothetical, and I will not rule on them. The issue of whether Chaudhri may represent a nationwide class will be determined, if ever, at the class certification stage. *See In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 534 (E.D. Pa. 2010) (denying defendant's motion to dismiss claims as to nationwide plaintiffs because "[t]his argument is premature; the question of who will comprise the proposed class (i.e. whom named plaintiffs may represent) should be determined at class certification.").[12] Similarly, Chaudhri has not yet asserted pled any non-New Jersey claims against Lumileds. Issues of adequacy of representation, possible subclasses, and so forth, will be addressed later.

Lumileds's motion to dismiss on these grounds is denied.

### D. Chaudhri's Motion for Summary Judgment

Chaudhri moves for summary judgment on the basis that the "100% more light" statement is "false or misleading." He does not identify which of his five pleaded claims warrant summary judgment. Nor does he address any of the remaining elements of his five pleaded claims. Nor has he established the

---

[12]     In arguing that this Court does not have jurisdiction over non-New Jersey plaintiffs, Lumileds addresses *in personam* jurisdiction as it relates to itself. (DBr at 30-31 ("This Court does not have general jurisdiction over Lumileds because it is not incorporated in New Jersey and it does not have a principal place of business in New Jersey"); 32 ("at most the Court has specific jurisdiction over Lumileds in New Jersey with respect to claims asserted by New Jersey residents who bought X-tremeVision headlamps in New Jersey")). It is unclear how this contention would apply to this Court's jurisdiction over the non-New Jersey plaintiffs. Lumileds has not brought a motion alleging that this Court lacks *in personam* jurisdiction over it as a foreign corporation, and seems to at least concede that this Court has specific jurisdiction.

lack of any disputed fact as to this single element of falsity. His motion, extremely premature in any event, is denied.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Chaudhri has not met his burden under this standard. He proffers evidence as to one element, falsity. On a motion to dismiss standard, I was required to indulge Chaudhri's interpretation of the packaging. That is not to say, however, that he would prevail on the issue. As stated above, the nature and interpretation of the representations on the packaging, and their effect on a consumer, are not settled but disputed at this stage. Accordingly, Chaudhri's cross-motion for summary judgment is denied.

### III.   Conclusion

For the reasons set forth above, Lumileds's motion to dismiss (DE 15) is denied. Chaudhri's cross-motion for summary judgment (DE 24) is likewise denied.

An appropriate order follows.

Dated: December 3, 2018

**Kevin McNulty**
**United States District Judge**